

Michael D. Adams
Direct Dial: (714) 641-1855
E-mail: madams@rutan.com

September 6, 2024

**VIA ECF**

The Honorable Naomi Reice Buchwald, U.S.D.J.
Courtroom 21A
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

    Re:    *Nike, Inc. v. S2, Inc. et al.*, USDC SDNY Case No. 1:24-cv-05307-NRB

Dear Judge Buchwald:

    This firm represents the defendants in the above-captioned matter, namely: S2, Inc., Surgeon Worldwide, Inc. ("The Shoe Surgeon"), Dominic Ciambrone ("Mr. Ciambrone"), and Dallas Imbimbo ("Mr. Imbimbo"; collectively, "Defendants"). Defendants request leave to seek dismissal of Plaintiff Nike, Inc.'s ("Plaintiff" or "Nike") complaint for lack of personal jurisdiction under Federal Rule 12(b)(2), for improper venue under Federal Rule 12(b)(3), or, in the alternative, to transfer venue to the Central District of California ("C.D. Cal.") under 28 U.S.C. § 1404(a). Thus, per the Court's Individual Practices, we write to request a pre-motion conference.

    Plaintiff Nike brings this lawsuit to stifle the lawful, creative efforts of The Shoe Surgeon, its founder, Mr. Ciambrone, and his business partner, Mr. Imbimbo. As alleged by Nike, this is not its first case targeting unauthorized customization, i.e. any customization of a Nike shoe not expressly authorized by and profiting Nike. Indeed, Nike's "publicly filed actions" include a 2021 suit against MSCHF (Case No. 1:21-cv-01679 in C.D. Cal.), and a 2022 suit against Drip Creationz (Case No. 5:21-cv-01201 in C.D. Cal.). (*See* Complaint, ¶ 84.) Moreover, Nike's counsel on this case is pursuing a trademark infringement action in C.D. Cal., *see* Case No. 23-cv-10495-AB-AS, Dkt. 1 (C.D. Cal. December 14, 2023) (filed by *inter alia* Tamar Y. Duvdevani of DLA Piper LLP). But while Nike filed all of those cases targeting California-based defendants in California, here, Nike sued two California-based individuals and two California-based entities in New York. (*See id.*, ¶¶ 15-18.) Given that Nike is based in Oregon, not New York (*id.* ¶ 14), its decision to sue where none of the parties reside is unreasonable and imposes a needless and disproportionate burden on the four California-based Defendants. These facts, considered with all relevant factors, demonstrate that the exercise of personal jurisdiction here would be unreasonable. *See Aero AG Holdings, LLC v. Huggoes Fashion LLC*, 2022 WL 4463896, at *3-*4 (S.D.N.Y. Sept. 26, 2022).

    Even if the Court were to find the exercise of personal jurisdiction proper, this case should be dismissed or transferred to the Central District of California because Nike agreed to a mandatory

Rutan & Tucker, LLP | 18575 Jamboree Road, 9th Floor
Irvine, CA 92612 | 714-641-5100 | Fax 714-546-9035
Orange County | Palo Alto | San Francisco | Scottsdale | www.rutan.com

2835/037430-0009
21138335.2 a09/05/24



The Honorable Naomi Reice Buchwald, U.S.D.J.
September 6, 2024
Page 2

forum selection clause covering the alleged "Infringing Digital Shoes" by swatchbook, Inc. on the "Remix" app.  (*See* Complaint, ¶¶ 136-141.)  Specifically, in order to obtain the digital mock-up images displayed on p. 46 of the Complaint (*id.*, ¶¶ 138-139), Plaintiff or its representative had to first download the Remix app and click to accept *inter alia* swatchbook, Inc.'s "Terms of Use." Those "Terms of Use," *available at* https://www.swatchbook.us/terms-of-use, state as follows:

> **A. Governing Law; Jurisdiction.** . . .  With respect to any disputes or claims not subject to informal dispute resolution or arbitration [*intellectual property claims are excepted*], you agree not to commence or prosecute any action in connection therewith other than in the state and federal courts located in USA County, State of California, . . .

It is "well-established" in this Circuit that such a forum selection clause may be enforced through a Rule 12(b) motion to dismiss, including a motion for improper venue per Rule 12(b)(3). *TradeComet.com LLC v. Google, Inc*., 647 F.3d 472, 475 (2d Cir.2011); *see also Production Resource Group, L.L.C. v. Martin Professional, A/S*, 907 F.Supp.2d 401, 407 (S.D.N.Y. 2012). Here, swatchbook, Inc.'s "clickwrap" forum selection clause was reasonably communicated to Plaintiff, is "prima facie valid," and should be enforced unless demonstrated to be "unreasonable" under the circumstances.  *See Brown v. Web.com Group, Inc*., 57 F. Supp. 3d 345, 359 (S.D.N.Y. 2014) (quoting *M/S Bremen et al. v. Zapata Off–Shore Co*., 407 U.S. 1, 10 (1972)).  Moreover, Defendants may enforce this forum selection clause against Nike, because Defendants are "closely related" to the other signatory (swatchbook, Inc.) by virtue of Nike's allegations that Defendants infringed its marks in "partnership with swatchbook, Inc."  Complaint, ¶ 136; *see also Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013) (holding that "a non-signatory to a contract . . . may enforce the forum selection clause against a signatory when the non-signatory is 'closely related' to another signatory," i.e. has a "sufficiently close [relationship] that [this] enforcement of the forum selection clause is 'foreseeable' to the signatory").

Here, Nike's allegations against the Remix app both expressly name and clearly implicate swatchbook, Inc. (another California-based entity) in Defendants' accused conduct relating to "Infringing Digital Shoes."  (*See* Complaint, ¶ 2 [Defendants "ink digital rights agreements based on Nike trademarks"], ¶ 12 [asking the Court to enjoin Defendants from "selling Nike intellectual property in the form of digital or virtual goods"], ¶ 84 ["Nike polices unauthorized use of its trademarks, including by 'cusotmizers' or peddlers of 'virtual goods' similar to Defendants," and, effectively, swatchbook, Inc.], ¶¶ 136-141 [details regarding Defendants' "partnership with swatchbook, Inc. to create" the Remix app], ¶ 152 ["Defendants intentionally use the Nike Asserted Marks and/or confusing similar marks to create an association between its Infringing Digital Shoes and Nike"], and p. 61 Prayer for Relief [seeking to enjoin Defendants and "all those persons or entities in active concert or participation with any of them"].)  Given that all of the alleged digital/virtual infringement is on swatchbook, Inc.'s Remix app, Defendants' enforcement of its forum selection clause in response to those allegations is both reasonable and foreseeable. In short, Nike's agreement not to commence or prosecute any action as to its intellectual property rights except in California per its agreement with swatchbook, Inc. should be enforced.



The Honorable Naomi Reice Buchwald, U.S.D.J.
September 6, 2024
Page 3

If the Court does not grant dismissal under Federal Rule 12, Defendants request that the Court transfer this case to C.D. Cal. pursuant to 28 U.S.C. § 1404(a). The forum selection clause favors transfer, and, as Defendants will elaborate in their motion papers, the convenience of the parties and witnesses also heavily favors transfer. Among other things, all four Defendants and 31 out of The Shoe Surgeon's 32 employees (including all involved in the design/creation of customized shoes) live in C.D. Cal., along with several nonparty witnesses, none of whom could be compelled to testify in New York. These include employees of swatchbook, Inc., and many "prominent and influential athletes, influencers, and public figures" Nike lists as "collaboration partnerships" (*see* Complaint ¶¶ 28, 81-82), including LeBron James, Travis Scott, Drake, Nelly, Ben Affleck, Matt Damon, Playstation, Netflix, and Stussy. (*Id.*) Further, the relative means of Defendants versus Nike, a public company with 2024 revenue of $51.4 billion and a market cap of over $121 billion, favors transfer to a mutually convenient forum. The case would also likely be heard an entire year earlier if transferred, based on the relative congestion of civil cases in C.D. Cal. (30.4 months to trial) versus S.D.N.Y. (42.4 months to trial). In addition, as Nike's Complaint suggests (*see, e.g.* ¶ 143 ["friendly meetings"]), and Defendants' counterclaims will detail, the parties have had extensive discussions and engagements over the last seven years, the vast majority of which were in California and none of which were in New York. This began in 2017 with Nike's request that Mr. Ciambrone train its Jordan Brand staff in customization, including the exact "deconstruction and reconstruction" process Plaintiff now takes issues with. (*Cf.* Complaint, ¶¶ 23, 90.) As Nike learned in that class, Defendants do not make any Nike-branded shoes "entirely from scratch," as speciously alleged (*id.*, ¶ 100); instead, Defendants buy authentic shoes for students (including Nike staff) to customize. Setting aside Nike's false counterfeiting allegations, after Mr. Ciambrone provided Nike with a lifetime's worth of customizing know-how back in 2017, Defendants had numerous meetings and projects with Nike, primarily in Los Angeles, California. For many of these projects, Nike unjustly benefited from Defendants' efforts and innovative creations to enhance its reputation, while failing to compensate Defendants. Because the witnesses and evidence on these issues are located in the Central District of California, and the other relevant factors noted also favor transfer, a convenience transfer is in the interest of justice.

We appreciate the Court's time and consideration of this request.

        Respectfully submitted,

        RUTAN & TUCKER, LLP

        Michael D. Adams

cc:    Tamar Y. Duvdevani (tamar.duvdevani@us.dlapiper.com);
       Marc E. Miller (marc.miller@us.dlapiper.com);
       Joshua Schwartzman (joshua.schwartzman@us.dlapiper.com);
       Gabrielle Chasin Velkes (gabrielle.velkes@us.dlapiper.com) (all via ECF).