**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------X
                       :

NIKE, INC.,                  :
                       :

        Plaintiff,         :
                       :

             v.             :
                       :

S2 SERVICES, INC. F/K/A S2, INC.;  :
SURGEON WORLDWIDE, INC.,  :
DOMINIC CHAMBRONE A/K/A  :       Case No. 1:24-cv-05307-NRB
DOMINIC CIAMBRONE, AND DALLAS  :
IMBIMBO              :
                       :

        Defendants.      :

-------------------------------------------------------X
                       :

SURGEON WORLDWIDE, INC.,  :
DOMINIC CHAMBRONE A/K/A  :
DOMINIC CIAMBRONE, AND DALLAS  :
IMBIMBO,              :
                       :

        Counterclaim-Plaintiffs,  :
                       :

            v.            :
                       :

NIKE, INC.,

        Counterclaim-Defendant.

-------------------------------------------------------X

## NIKE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS COUNTERCLAIM

## **Table of Contents**

Page

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL BACKGROUND .................................................................................3

        A.      Nike's Counterfeiting and Infringement Claims....................................3

        B.      Nike's Public Statement About The Complaint......................................4

        C.      Defendants' Counterclaim for Defamation.............................................4

III.    LEGAL STANDARD ON A MOTION TO DISMISS ........................................6

IV.     LEGAL STANDARD ON DEFAMATION ........................................................7

V.      DEFENDANTS' DEFAMATION COUNT FAILS AND SHOULD BE
        DISMISSED WITH PREJUDICE ......................................................................8

        A.      Statements in the Complaint Are Absolutely Privileged .......................9

        B.      Nike's Public Statement Is Privileged Under Section 74 of the New York
                Civil Rights Law ................................................................................11

                1.      Nike's out of court statement is a fair and true reporting of the
                        allegations in the Complaint and do not suggest more serious
                        conduct...................................................................................11

                2.      The Williams exception does not apply because Defendants fail to
                        allege that Nike filed its Complaint maliciously and for the sole
                        purpose of defaming them. ......................................................13

        C.      If Not Dismissed, The Defamation Count Will Multiply The Proceedings ..........18

VI.     CONCLUSION...................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adelson v. Harris*,
    973 F. Supp. 2d 467 (S.D.N.Y. 2013)........................................................................18

*Alf v. Buffalo News, Inc.*,
    21 N.Y.3d 988 (N.Y. 2013) ........................................................................................8

*Armstrong v. Simon & Schuster, Inc.*,
    649 N.E.2d 825 (N.Y. 1995)......................................................................................18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................................6

*Biro v. Conde Nast*,
    883 F. Supp. 2d 441 (S.D.N.Y. 2012)........................................................................8

*Bridge C.A.T. Scan Assocs. v. Ohio-Nuclear, Inc.*,
    608 F.Supp. 1187 (S.D.N.Y. 1985) ...........................................................................7

*Capsolas v. Pasta Resources*,
    No. 12 Civ. 5533 (PKC), 2013 WL 703670 (S.D.N.Y. Feb. 26, 2013)...................14

*Coach, Inc. v. Horizon Trading USA Inc.*,
    908 F. Supp. 2d 426 (S.D.N.Y. 2012)......................................................................17

*Consolidated Cigar Corp. v. Monte Cristi de Tabacos*,
    58 F. Supp. 2d 188 (S.D.N.Y. 1999)........................................................................17

*Cuoco v. Moritsugu*,
    222 F.3d 99 (2d Cir. 2000)..........................................................................................7

*D'Annunzio v. Ayken, Inc.*,
    876 F. Supp. 2d 211 (E.D.N.Y. 2012) ....................................................................7, 8

*Egiazaryan v. Zalmayev*,
    No. 11 Civ. 2670 PKC, 2011 WL 6097136 (S.D.N.Y. Dec. 7, 2011)......................14

ii

*El Greco Leather Prods. Co. v. Shoe World, Inc.*,
   623 F.Supp. 1038 (E.D.N.Y. 1985), *aff'd*, 806 F.2d 392 (2d Cir. 1986) ...................12, 13, 16

*Ellington Credit Fund, Ltd. v. Select Portfolio Servs., Inc.*,
   No. 08 Civ. 2437 (RJS), 2008 WL 11510668 (S.D.N.Y. June 12, 2008)...............................19

*Emergency Enclosures, Inc. v. Nat'l Fire Adjustment Co.*,
   68 A.D.3d 1658 (4th Dep't 2009)............................................................................................14

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
   669 F. Supp. 2d 405 (S.D.N.Y. 2009)......................................................................................13

*Gallina v. Giacalone*,
   655 N.Y.S.2d 317 (N.Y. Sup. Ct. 1997) ...................................................................................15

*Geiger v. Town of Greece*,
   311 F. App'x 413 (2d Cir. 2009) .......................................................................................7, 8, 12

*Grasso v. Mathew*,
   164 A.D.2d 476 (3d Dep't 1991)................................................................................................7

*Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation*,
   No. 06-cv-1260 (KAM), 2009 WL 4547792 (E.D.N.Y. Dec. 1, 2009)..............................9, 10

*Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.*,
   424 N.Y.S.2d 165 (N.Y. 1979) ..................................................................................................8

*Kamchi v. Weissman*,
   125 A.D.3d 142 (2d Dep't 2014)................................................................................................7

*Kesner v. Dow Jones & Company*,
   515 F. Supp. 3d 149 (S.D.N.Y. 2021)...........................................................................8, 11, 18

*Lacher v. Engel*,
   33 A.D.3d 10 (1st Dep't 2006) ..............................................................................................8, 10

*Lombardo v. Dr. Seuss Enterprises, L.P.*,
   No. 16 Civ. 9974 (AKH), 2017 WL 1378413 (S.D.N.Y. Apr. 7, 2017)..............................6, 15

*Mercado v. City of New York*,
   No. 22 Civ. 9462 (NRB), 2024 WL 3185963 (S.D.N.Y. Jun. 26, 2024 ....................................4

*O'Brien v. Alexander*,
   898 F. Supp. 162 (S.D.N.Y. 1995), aff'd, 101 F.3d 1479 (2d Cir. 1996) .............................7, 9

*Olivet University v. Newsweek Digital LLC*,
   No. 23 Civ. 5670 (NRB), 2024 WL 1892563 (S.D.N.Y. Apr. 30, 2024)...................................6

iii

*Owoyemi v. Credit Corp Solutions*,
  596 F. Supp. 3d 514 (S.D.N.Y. 2022)........................................................6, 11

*P. Kaufmann, Inc. v. Americraft Fabrics, Inc.*,
  232 F. Supp. 2d 220 (S.D.N.Y. 2002)................................................................16

*Panghat v. New York State Div. of Human Rights*,
  89 A.D.3d 597(1st Dep't 2011) .......................................................................14

*Pizza Inn, Inc. v. Adeniregun*,
  No. 3:08-CV-1598-N, 2011 WL 13290459 (N.D. Tex. Mar. 15, 2011)............10, 17

*Procter & Gamble Co. v. Quality King Distributors Inc.*,
  974 F.Supp. 190 (E.D.N.Y. 1997) ..............................................................12, 13

*Radiancy, Inc. v. Viatek Consumer Prods. Group*,
  138 F. Supp. 3d 303 (S.D.N.Y. 2014)..............................................................16

*Riel v. Morgan Stanley*,
  No. 06 Civ. 524, 2007 WL 541955 (S.D.N.Y. Feb. 16, 2007) ................................13

*Seljak v. Pervine Foods*,
  LLC, No. 21 Civ. 9561 (NRB), 2023 WL 2354976 (S.D.N.Y. Mar. 3, 2023) ........................6

*Sparrow Fund Management LP v. MiMedx Group, Inc.*,
  No. 18-cv-4921, 2021 WL 1930294 (S.D.N.Y. May 13, 2021) ...............................18

*Tacopina v. O'Keeffe*,
  No. 14 Civ. 8379 PAC, 2015 WL 5178405 (S.D.N.Y. Sept. 4, 2015) ........................13

*Watson v. NY Doe 1*,
  439 F. Supp. 3d 152 (S.D.N.Y. 2020)................................................................7

*Weeden v. Lukezic*,
  201 A.D.3d 425 (1st Dep't 2022) ....................................................................14

*Wexler v. Allegion (UK) Limited*,
  374 F. Supp 3d 302 (S.D.N.Y. 2019)................................................................13

*Williams v. Williams*,
  23 N.Y.2d 592, 599 (1969) ....................................................13, 14, 16, 18

## Statutes

15 U.S.C.S. § 1114(1)(a) ...........................................................................9, 17

15 U.S.C. § 1116(d)(1)(B) ...........................................................................1, 17

iv

15 U.S.C § 1127 ..................................................................................................1, 3, 10

Lanham Act ........................................................................................... *passim*

New York Civil Rights Law Section 74 ............................................................. *passim*

## I.    INTRODUCTION

Nike brought this action against defendants Surgeon Worldwide, Inc., Dominic Chambrone a/k/a Dominic Ciambrone, and Dallas Imbimbo (collectively "Defendants") in response to a series of unauthorized conduct involving Nike's valuable trademarks and trade dress, and after Defendants refused to cease that conduct.  Nike's Second and Fourth Counts are for Lanham Act counterfeiting and contributory counterfeiting, respectively.  These Counts relate to (1) Defendants' unauthorized creation and mass sales of brand-new shoes with brand-new identical versions of Nike trademarks affixed to those shoes; and (2) Defendants teaching others how to make such brand-new shoes bearing new "Nike" marks.  Nike alleges in connection with this conduct that Defendants are making shoes "entirely from scratch, i.e., brand new shoes that look just like Nike shoes and contain identical or nearly identical versions of Nike's trademarks and trade dress yet were not authorized by Nike" and are "teaching third parties how to manufacture Counterfeit 'Nike' Shoes from scratch, with little to no material original to any authorized Nike shoe."  (ECF No. 9 ("Compl.") ¶¶ 104, 134.)  The unauthorized creation and use of trademarks that are identical to Nike's registered trademarks is, by statutory definition, counterfeiting.  15 U.S.C. § 1116(d)(1)(B) (defining "counterfeit mark"); 15 U.S.C § 1127 (defining "counterfeit").

Shortly after Nike filed this action, it issued a public statement about the litigation which was published in some of the articles reporting on the case:

> Our goal is to make sure consumers are not misled and have access to authentic Nike, Inc. products that are authorized and created according to our high standards with the performance benefits they expect. It is unfortunate that after many attempts to resolve this matter privately, we've had to take legal action against the Shoe Surgeon for counterfeiting, mass customization, and trademark infringement. In order to safeguard our brand and IP, and aligned with Nike's commitment to protect the consumer from counterfeit Nike product, we are left with no choice but to seek a legal solution to address how the Shoe Surgeon is constructing counterfeit 'Nike' footwear from scratch and selling it as officially branded product. Further, the Shoe Surgeon is teaching others to create counterfeit 'Nike' sneakers. These activities are

1

illegal, deceive consumers, and create confusion in the marketplace around source, authenticity, and quality of Nike products.

We valued our relationship with the Shoe Surgeon and do not have any issues with the limited, one-of-one customization he's been doing for us or his clients, when allowed under Nike-sponsored athletes' contracts. In fact, we value opportunities for our athletes, consumers and partners to express themselves through their own style and creativity.

Defendants answered Nike's complaint on November 18, 2024 and asserted multiple counterclaims, including Count I for defamation. (ECF No. 36.) According to Defendants, Nike's use of the words "counterfeit" and "from scratch" are defamatory. Defendants believe that "counterfeit" is not a legal claim but rather an "incendiary" term, and that the words "from scratch" mischaracterize Defendants' conduct. (ECF No. 36 ("Countercl.") ¶ 128.) Specifically, Defendants allege that their accused counterfeiting conduct amounts to lawful "customization" because some unspecified portion of a Nike shoe is used as one of the materials to make the new shoe (Defendants purposefully gloss over in their pleading that, *at best*, all that is allegedly used from the original Nike shoe in the newly created shoe is a modified Nike sole; they also do not specifically deny that they create brand new "Nike" trademarks). Because some authentic Nike materials are allegedly used in the newly fabricated shoe, Defendants cry foul at Nike's use of the term "from scratch" – even though Defendants themselves admit to using the same nomenclature to describe their services. (*Id*. ¶ 128.)

Defendants did not seek dismissal of Nike's counterfeiting claims, so their adjudication will occur after the ongoing discovery period. Defendants' defamation claim, however, is ripe for dismissal now, without the need for discovery. This is because Nike's use of the word "counterfeit" and its underlying "from scratch" allegations are highly pertinent to its legal claim for counterfeiting and are absolutely privileged as a matter of law. Relatedly, Nike's press release, a fair and accurate summary of its legal claim, is likewise covered by absolute privilege. Because

of these privileges, Defendants' defamation counterclaim fails to plausibly plead any claim for relief, and because no amendment can alter this fact, the claim should be dismissed with prejudice.

## II.    FACTUAL BACKGROUND

### A.    Nike's Counterfeiting and Infringement Claims

On July 16, 2024, Nike filed a complaint for Lanham Act counterfeiting, trademark infringement, dilution, unfair competition and related state law claims against Defendants. (*See generally*, Compl.)  The Complaint detailed Nike's historical disputes with Defendants over their unauthorized use of Nike's intellectual property as well as their ongoing unauthorized conduct. *Id*.  Among other detailed factual allegations supporting its claims, Nike's Complaint alleges that Defendants are designing and manufacturing new counterfeit "Nike" shoes "entirely from scratch," "i.e., brand new shoes that look just like Nike shoes and contain identical or nearly identical versions of Nike's trademarks and trade dress yet were not authorized by Nike," Compl. ¶ 104, and "are teaching third parties how to manufacture counterfeit 'Nike' shoes from scratch, with little to no material original to any authorized Nike shoe."  (Compl. ¶ 134.)

Nike's Second Count for counterfeiting asserts that "Defendants have knowingly used and continue to use in commerce, without Nike's permission or authorization, reproductions, substantially indistinguishable variations, counterfeit, copies, and colorable imitations of products and services that are identical to, or substantially indistinguishable from, the Nike Asserted Marks."  (Compl. ¶ 166.)  Nike's Fourth Count for contributory counterfeiting asserts that "Defendants have and continue to materially contribute to and knowingly facilitate the sale, offers for sale, marketing, and/or distribution of shoes that infringe the Nike Asserted Marks through the Infringing Customization Workshops, Infringing Academies, and Infringing Shoemaking Products which teach third parties how to create Counterfeit 'Nike' Shoes."  (Compl. ¶ 181.)  Both Counts are brought pursuant to Section 1114 of the Lanham Act.

**B.      Nike's Public Statement About The Complaint**

Shortly after filing its lawsuit, Nike issued a public statement about this action, as follows:

Our goal is to make sure consumers are not misled and have access to authentic Nike, Inc. products that are authorized and created according to our high standards with the performance benefits they expect. It is unfortunate that after many attempts to resolve this matter privately, we've had to take legal action against the Shoe Surgeon for counterfeiting, mass customization, and trademark infringement. In order to safeguard our brand and IP, and aligned with Nike's commitment to protect the consumer from counterfeit Nike product, we are left with no choice but to seek a legal solution to address how the Shoe Surgeon is constructing counterfeit 'Nike' footwear from scratch and selling it as officially branded product. Further, the Shoe Surgeon is teaching others to create counterfeit 'Nike' sneakers. These activities are illegal, deceive consumers, and create confusion in the marketplace around source, authenticity, and quality of Nike products.

We valued our relationship with the Shoe Surgeon and do not have any issues with the limited, one-of-one customization he's been doing for us or his clients, when allowed under Nike-sponsored athletes' contracts. In fact, we value opportunities for our athletes, consumers and partners to express themselves through their own style and creativity.

Duvdevani Decl. ¶ 2, Ex. 1.[1]

**C.      Defendants' Counterclaim for Defamation**

Defendants counterclaim that Nike defamed them by filing and reporting on its legal claims and factual allegations of counterfeiting.  (Countercl. ¶¶ 12, 128-133.)  Specifically, Defendants allege that Nike's in-court allegations and out-of-court statements pertaining to counterfeiting and making shoes "from scratch" are false and intended to cause third parties to "think less of The Shoe Surgeon."  (*Id.* ¶¶ 99, 107, 128.)  With respect to the out-of-court statement, Defendants claim that two sentences of Nike's public statement are defamatory.  (*Id.* at ¶¶ 104, 128.)  As

---

[1] Nike's public statement is incorporated by reference into the Counterclaims; for the Court's convenience the Complex article containing the full statement is attached as Exhibit 1 to the January 21, 2025 Declaration of Tamar Y. Duvdevani ("Duvdevani Decl.").  *See Mercado v. City of New York*, No. 22 Civ. 9462 (NRB), 2024 WL 3185963, at *2 (S.D.N.Y. Jun. 26, 2024) ("[A] court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." (internal quotation marks and citation omitted)).

shown below, those two out of court statements are a direct summary of allegations in Nike's Complaint:

| Out-Of-Court Statements | Complaint Allegation |
|---|---|
| "[T]he Shoe Surgeon is constructing counterfeit 'Nike' footwear from scratch and selling it as officially branded product." (Countercl. ¶¶ 8, 10, 104, 128; ECF No. 44 at 1 (Letter).) | "Further, in addition to their significant modifications of existing Nike shoes, Defendants are designing and manufacturing new "Nike" shoes entirely from scratch, i.e., brand new shoes that look just like Nike shoes and contain identical or nearly identical versions of Nike's trademarks and trade dress yet were not authorized by Nike. These are Counterfeit 'Nike' Shoes." (Compl. ¶ 104; s*ee also* Compl. ¶¶ 4, 20, 100, 163-171.) |
| "Further, the Shoe Surgeon is teaching others to create counterfeit 'Nike' sneakers." (ECF No. 36 at ¶¶ 8, 10, 104, 128 (Countercl.); ECF No. 44 at 1 (Letter).) | "Upon information and belief, through their online and/or in-person classes, Defendants are teaching third parties how to manufacture Counterfeit 'Nike' Shoes from scratch, with little to no material original to any authorized Nike shoe." (Compl. ¶ 134*; see also* Compl. ¶¶ 7, 180-188.) |

Defendants also claim that Nike's legal claims and factual allegations harmed their business. (Countercl. ¶¶ 109-113.) Defendants do <u>not</u> allege, and cannot plausibly allege in any amendment, that Nike filed this action and issued its public statement for the "sole purpose" of defaming Defendants. Rather, they acknowledge the pre-suit correspondence between the parties, including that they allegedly worked to "address Nike's stated concerns" and allege that Nike's counterfeiting claims raise "tough questions" on legal issues such as the First Sale doctrine. (*Id*. ¶ 10.)

### III.    LEGAL STANDARD ON A MOTION TO DISMISS[2]

Under Federal Rule of Civil Procedure 12(b)(6), a pleading is subject to dismissal for failure to plausibly state a claim upon which relief can be granted.  Where a claim fails to include "factual content that allows the court to draw the reasonable inference that the [accused party] is liable for the misconduct alleged," the plausibility standard is not met.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  Factual allegations "must be enough to raise a right to relief above the speculative level," and must be free of mere labels, conclusions, and formulaic recitals of elements for claims.  *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief]," and legal conclusions are not entitled to a presumption of truth; a court assessing the sufficiency of a complaint must disregard them.  *Iqbal,* 556 U.S. at 678–79; *Seljak v. Pervine Foods*, LLC, No. 21 Civ. 9561 (NRB), 2023 WL 2354976, at *5 (S.D.N.Y. Mar. 3, 2023) (Buchwald, J.).   "In evaluating the sufficiency of a complaint, a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Olivet University v. Newsweek Digital LLC*, No. 23 Civ. 5670 (NRB), 2024 WL 1892563, at *3 (S.D.N.Y. Apr. 30, 2024) (Buchwald, J.) (internal quotation marks and citations omitted).  Dismissal with prejudice is appropriate where "[t]he problem with [plaintiff's] causes of action is substantive" such that amendment would be futile.  *Owoyemi v. Credit Corp Solutions*, 596 F. Supp. 3d 514, 521

---

[2] Nike's Motion stays the deadline to respond to Defendants' counterclaims.  *See Lombardo v. Dr. Seuss Enterprises*, L.P., No. 16 Civ. 9974 (AKH), 2017 WL 1378413, at *3 (S.D.N.Y. Apr. 7, 2017) ("A party may file a motion to dismiss only certain claims—*i.e.*, a partial motion to dismiss—and the filing of any motion under Rule 12 postpones a defendant's time to answer until fourteen days after the motion is decided." (citation omitted)).

(S.D.N.Y. 2022) (R. & R. adopted by the trial court) (quoting *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000)).

## IV.    LEGAL STANDARD ON DEFAMATION

"'The elements of a cause of action for defamation are a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must either cause special harm or constitute defamation per se.'" *Watson v. NY Doe 1*, 439 F. Supp. 3d 152 (S.D.N.Y. 2020) (quoting *Kamchi v. Weissman*, 125 A.D.3d 142, 156-157 (2d Dep't 2014)).   However, "[i]n the context of a legal proceeding, statements by parties and their attorneys are absolutely privileged if, by any view or under any circumstances, they are pertinent to the litigation." *O'Brien v. Alexander*, 898 F. Supp. 162, 171 (S.D.N.Y. 1995), aff'd, 101 F.3d 1479 (2d Cir. 1996) (citing *Grasso v. Mathew*, 164 A.D.2d 476, 479 (3d Dep't 1991)).   This absolute privilege is broad, embracing "anything that may possibly or plausibly be relevant or pertinent, with the barest rationality, divorced from any palpable or pragmatic degree of probability." *Id.*   The privilege "offers a shield to one who publishes libelous statements in a pleading or in open court for the purpose of protecting litigants' zeal in furthering their causes." *D'Annunzio v. Ayken, Inc.*, 876 F. Supp. 2d 211, 217 (E.D.N.Y. 2012) (quoting *Bridge C.A.T. Scan Assocs. v. Ohio–Nuclear, Inc.*, 608 F.Supp. 1187, 1195 (S.D.N.Y. 1985)).

Relatedly, out-of-court statements such as demand letters or statements to the public or media are also subject to privilege under Section 74 of the New York Civil Rights Law ("Section 74") "to the extent that they represent fair and true reports of what occurred in the proceeding." *D'Annunzio*, 876 F. Supp. 2d at 220; *see also Geiger v. Town of Greece*, 311 F. App'x 413, 417 (2d Cir. 2009) ("Under [N.Y. Civil Rights Law § 74], a libel action cannot be maintained for the publication of a 'fair and true' report of an official proceeding."). The Section 74 privilege is also absolute. *Alf v. Buffalo News, Inc.*, 21 N.Y.3d 988, 989 (N.Y. 2013).   "For a report to be

characterized as 'fair and true' within the meaning of the statute," "it is enough that the substance of the article be substantially accurate;" the use of "the exact words" are not necessary and "some liberality" in the reporting does not waive the privilege afforded by Section 74. *Geiger*, 311 F. App'x at 417 (quoting *Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.*, 424 N.Y.S.2d 165, 168 (N.Y. 1979)). "[T]he challenged language should not be dissected and analyzed with a lexicographer's precision" *D'Annunzio*, 876 F.Supp.2d at 217 (quotation marks and citations omitted); *see also Biro v. Conde Nast*, 883 F. Supp. 2d 441, 477 (S.D.N.Y. 2012) ("As the New York Court of Appeals has explained, '[a] fair and true report admits of some liberality; the exact words of every proceeding need not be given if the substance be substantially stated.'") (quoting *Holy Spirit Ass'n for Unification of World Christianity*, 424 N.Y.S.2d at 1187). "Comments that essentially summarize or restate the allegations of a pleading filed in an action are the type of statements that fall within § 74's privilege." *Kesner v. Dow Jones & Company*, 515 F. Supp. 3d 149, 174 (S.D.N.Y. 2021) (quoting *Lacher v. Engel*, 33 A.D.3d 10, 17 (1st Dep't 2006)). Indeed, even statements that use "more colorful language" than the official proceeding are privileged so long as they do not suggest more serious conduct. *See Geiger*, 311 F. App'x at 417.

## V.    DEFENDANTS' DEFAMATION COUNT FAILS AND SHOULD BE DISMISSED WITH PREJUDICE

Defendants' Count I should be dismissed with prejudice for at least two reasons. First, the statements in Nike's complaint are absolutely privileged as a matter of New York common law. Second, Nike's press statement, which is no more than a fair and true report of allegations in its Complaint, is likewise absolutely privileged under N.Y. Civ. Rights Law § 74.

### A.    Statements in the Complaint Are Absolutely Privileged

It is not entirely clear from Defendants' pleadings and response to Nike's pre-motion letter whether Defendants' defamation claim is based in part on statements in Nike's Complaint.  (*See* Countercl. ¶¶ 7-8, 11, 131.)   Assuming that it is, however, those statements are absolutely privileged and Nike cannot be held liable for making them in a judicial proceeding as a matter of law. *See O'Brien*, 898 F. Supp. at 171.

First, Defendants cannot assert a claim for defamation against Nike based on the fact that Nike commenced a lawsuit against them.   As is its statutory right as a holder of registered trademarks, Nike asserts counterfeiting claims and supports those claims with allegations that Defendants are engaged in creating and selling "counterfeit" Nike shoes by, among other things, affixing "Swooshes" and other registered Nike marks to shoes that Nike did not manufacture or authorize, are undoubtedly related to the litigation.  *See Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation*, No. 06-cv-1260 (KAM), 2009 WL 4547792, at *10 (E.D.N.Y. Dec. 1, 2009) (statements in a complaint that referred to defendants' use of *counterfeit* tax stamps on cigarettes were pertinent even to a Lanham Act *false advertising* claim).   Nike's Second Count for counterfeiting under 15 U.S.C.S. § 1114(1)(a) asserts that Defendants are manufacturing brand new "Nike" shoes using unauthorized, identical versions of Nike's registered trademarks and trade dress and selling them to downstream consumers.  (Compl. ¶¶ 163-171.)  Section 1114(1)(a) confers on Nike the right to assert a claim for counterfeiting against "any person who uses in commerce a counterfeit of a registered mark in connection with the sale, offering for sale or advertising of any goods in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable to the registrant of the mark."  The Lanham Act defines a "counterfeit" mark as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark."   15 U.S.C. § 1127.   Thus, Nike's allegations that Defendants are

manufacturing and selling counterfeit "Nike" shoes are highly pertinent to its Complaint and, indeed, Nike could not have plead its claims for counterfeiting without using the word "counterfeit." *C.f. Lacher v. Engel*, 33 A.D.3d 10, 15 (1st Dep't 2006) ("It is clear that the statement, Lacher 'defrauded [Parametric]' was pertinent to the second cause of action for fraud in the malpractice complaint. Indeed, it is difficult to see how one could plead a claim of fraud and never state that the perpetrator 'defrauded' the victim."), *rev'd in part on other grounds*, 220 N.E.3d 621 (N.Y. 2023). The term "counterfeit" is in the statute and "counterfeiting" is a legal claim and whether Defendants are liable for counterfeiting will be ultimately determined by the Court or a jury. But Nike's use of these terms is not defamatory as a matter of law. *Id.*

Second, Nike's allegations that Defendants manufacture, and teach others how to create, new "Nike" shoes "from scratch" is likewise highly pertinent to its Second Count for counterfeiting and Fourth Count for contributory counterfeiting. Defendants' "from scratch" conduct is one of the key factual allegations supporting Nike's counterfeiting claim. Specifically, these allegations explain that Defendants are not merely embellishing an authentic Nike shoe with paint or other decoration; rather, they are manufacturing brand new "Nike" shoes that Nike never manufactured or authorized. Defendants' new "Nike" shoes are made with leather and other materials that Nike did not manufacture or authorize and use identical or nearly-identical versions of Nike's registered trademarks that Nike did not manufacture or authorize. (Compl. ¶¶ 103-104, 134.) These allegations support a finding of Lanham Act counterfeiting and are highly pertinent to Nike's claims. *See* Section 1116; *Gristede's Foods*, 2009 WL 4547792, at *10; *Lacher*, 33 A.D.3d at 15 (underlying factual allegation that lawyer "used the retainer provision as a club" to extort fees from client was "directly pertinent" to breach of fiduciary duty claim).

In sum, Nike's statements in its Complaint are highly pertinent to its claims and, as a matter of law, Nike cannot be liable for defamation for making them in a judicial proceeding. Defendants cannot amend their claim to cure this deficiency and, thus, any defamation claim based on Nike's in court statements should be dismissed with prejudice. *Owoyemi*, 596 F. Supp. 3d at 521.

**B.**    **Nike's Public Statement Is Privileged Under Section 74 of the New York Civil Rights Law**

**1.**    **Nike's out of court statement is a fair and true reporting of the allegations in the Complaint and do not suggest more serious conduct.**

Defendants appear to concede the well-settled law that if out-of-court statements are a "fair and privileged report" of a judicial proceeding, the statements are privileged under Section 74. (*See* ECF No. 41 at 2; ECF No. 44 at 1); *Kesner*, 515 F. Supp. 3d at 174 (out-of-court statements that essentially summarize or restate the allegations of a complaint are exactly the type of statements that fall within Section 74's privilege). Nike's out-of-court statement, including the language "the Shoe Surgeon is constructing counterfeit 'Nike' footwear from scratch and selling it as officially branded product'" and "the Shoe Surgeon is teaching others to create counterfeit 'Nike' sneakers," does nothing more than accurately summarize Nike's allegations. (*Compare* Compl. ¶ 104, 134 ("'Defendants are designing and manufacturing new 'Nike' shoes entirely from scratch, i.e., brand new shoes that look just like Nike shoes and contain identical or nearly identical versions of Nike's trademarks and trade dress yet were not authorized by Nike. These are Counterfeit 'Nike' Shoes'" and "'Upon information and belief, through their online and/or in-person classes, Defendants are teaching third parties how to manufacture Counterfeit 'Nike' Shoes from scratch, with little to no material original to any authorized Nike shoe'").) The public statement thus comprises of a "fair and true" reporting of the allegations in its Complaint. *Kesner*, 515 F. Supp. 3d at 174*; supra* § II.B. Moreover, even if the out-of-court statement embellished Nike's legal claims, which it does not, the defamation claim would still fail. *Geiger*, 311 F. App'x

at 417 (affirming libel dismissal based on out-of-court statements that used "more colorful language" than in judicial proceeding); *see also El Greco Leather Prods. Co. v. Shoe World, Inc.*, 623 F.Supp. 1038, 1042 (E.D.N.Y. 1985) (privilege afforded to out-of-court use of the word "counterfeit" taken from complaint, even where court believed the counterfeit claim was more accurately one for the less heightened claim of trademark infringement), *aff'd*, 806 F.2d 392 (2d Cir. 1986).  Because Nike's out-of-court statements represent a substantially accurate report of the allegations in the Complaint, they are fully privileged under Section 74 and cannot serve as the basis of Defendants' defamation claim.  *See Procter & Gamble Co. v. Quality King Distributors Inc.*, 974 F.Supp. 190, 197 (E.D.N.Y. 1997) (finding that Letter and Press Release stating that defamation counterclaimant was selling counterfeit goods was a "substantially accurate" rendering of the allegations of the counter-defendant's complaint).

None of the arguments that Defendants make in their pre-motion letter defeat the accused statements' privilege.  For example, Defendants argue that, because the visual depictions from Nike's Complaint are not contained in the public statement, it is stripped it of crucial context.  ECF 44 at 2.  The referenced image is in fact <u>not</u> an original pair of Nike shoes, as Defendants assert,[3] but, regardless, its absence from the press release—a summary of Nike's allegations—does not remove it from § 74's purview.  (Compl. ¶¶ 4-5); *see Procter & Gamble Co.*, 974 F. Supp. at 197 (arguments that out-of-court statements tell an "incomplete story" rejected where statements "merely assert that P & G had instituted an action against Quality King for selling counterfeit products, as well as for trademark and package design infringement'" and provide "background to the misconduct" from the complaint) (quoting *El Greco*, 623 F.Supp. at 1043).  Defendants also

---

[3] The image in Compl. ¶ 5 clearly shows defendant Chambrone using his own materials, including a cut-out of a counterfeit Nike Swoosh, to create a substantially indistinguishable copy of a Nike Air Jordan 1.

assert that the statements "go far beyond its June 23, 2022 and August 21, 2023 letters" (where Nike accused The Shoe Surgeon of fabricating only "uppers from scratch" *i.e.*, the entire shoe but the sole). (ECF 44 at 2.) This is a distinction without a difference; and regardless, the germane issue is whether the press statement is a fair and accurate report of the Complaint, which it is. Defendants also argue that Nike's press statement states allegations as facts. (ECF 44 at 2.) Defendants are wrong. Nike's press statement references the filing of this litigation numerous times, providing the necessary context that the statements are reporting on allegations made in the lawsuit. *Supra* § II.B.; *see Wexler v. Allegion (UK) Limited*, 374 F. Supp 3d 302, 312 (S.D.N.Y. 2019) ("Moreover, because the Press Release repeatedly references the lawsuit… it is clear that the Press Release reports on allegations made in the Complaint, rather than presenting them as established facts."); *Quality King*, 974 F.Supp. at 197 (same). Because Nike's press statement is a fair and accurate report of the Complaint, it is privileged and Defendants' claim fails.

> **2.    The *Williams* exception does not apply because Defendants fail to allege that Nike filed its Complaint maliciously and for the sole purpose of defaming them.**

Finally, Defendants in their letter invoke the narrowly construed and rarely successful "*Williams*" exception, which is applicable where a party "maliciously institute[s] a judicial proceeding alleging false and defamatory charges" and "then circulate[s] a press release or other communication based thereon and escape liability by invoking the statute." *Williams v. Williams*, 23 N.Y.2d 592, 599 (1969). Critically, this exception requires that the legal action was brought "solely" for the purpose of defaming the opposing party. *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009) (citing *Riel v. Morgan Stanley*, No. 06 Civ. 524, 2007 WL 541955, at *12 (S.D.N.Y. Feb. 16, 2007)) (emphasis added); *see also Tacopina v. O'Keeffe*, No. 14 Civ. 8379 PAC, 2015 WL 5178405, at *5 (S.D.N.Y. Sept. 4, 2015) (*Williams* inapplicable because the claimant did not allege that the other party's sole purpose was to defame), *aff'd*, 645

F. App'x 7 (2d Cir. 2016); *Capsolas v. Pasta Resources*, No. 12 Civ. 5533 (PKC), 2013 WL 703670, at *3 (S.D.N.Y. Feb. 26, 2013) ("[The defamation counterclaim] asserts that plaintiff's assertions are 'false' and makes a conclusory allegation of 'malicious conduct', but alleges no facts asserting that the Complaint is a mere vehicle for insulating defamatory statements or amounts to 'a perversion of judicial proceedings.'"); *Egiazaryan v. Zalmayev*, No. 11 Civ. 2670 PKC, 2011 WL 6097136, at *9 (S.D.N.Y. Dec. 7, 2011) (counterclaimant's allegation that "the principle purpose of the complaint [was] to widely circulate it" and other general allegations of malice failed to allege that "the *sole* purpose of the suit [was] to *defame*" as required by the narrow *Williams* exception); *Emergency Enclosures, Inc. v. Nat'l Fire Adjustment Co.*, 68 A.D.3d 1658, 1664 (4th Dep't 2009) ("[T]he counterclaim does not fit within the exception to the statute set forth in [*Williams*] inasmuch as NFA failed to allege that the action was commenced solely for the purpose of defaming it").  In the absence of allegations that a claim was made "solely" to defame defendant, the privilege under Section 74 is absolute and applies even where plaintiff alleges malice or bad faith.  *Weeden v. Lukezic*, 201 A.D.3d 425, 429 (1st Dep't 2022) (collecting cases).

Defendants here fail to allege anywhere in their 141-paragraph Counterclaim that Nike's lawsuit was filed *solely* for the purpose of defaming them.  (*See generally* Countercl.)  Instead, Defendants allege in conclusory fashion that Nike knew its Complaint was false (Countercl. ¶¶ 9, 99-102) and that Nike maliciously wrote false statements and directed them to third parties not involved in this lawsuit.  (Countercl. ¶¶ 11, 103-107.)  Not only are these allegations of malice or bad faith conclusory, they are also insufficient to implicate *Williams*.  *See Weeden*, 201 A.D.3d at 429; *Egiazaryan*, 2011 WL 6097136, at *9; *Panghat v. New York State Div. of Human Rights*, 89 A.D.3d 597(1st Dep't 2011) ("The privilege under [§ 74] is absolute and applies even in the face of allegations of malice or bad faith[.]").  Tellingly, Defendants themselves note that Nike's

14

complaint "involves tough questions of at least fair use, the first sale doctrine, and whether the law should apply at all to restrict how a consumer can customize a shoe they bought for their own personal use and enjoyment." (Countercl. ¶ 10.)  They also acknowledge that the parties were in pre-suit discussions over Defendants' conduct and Nike's "stated concerns," which they claim they were working to address.  (ECF No. 36 ("Answer") ¶ 10.)  Defendants cannot plausibly admit that Nike's claims involve these "tough" legal questions and that Defendants had tried to address them before the litigation, while at the same time maintaining that Nike brought these claims solely to defame Defendants.

In addition to the allegations in Defendants' own Counterclaim, Nike's Complaint also amply demonstrates that Nike filed this litigation to enforce its intellectual property rights, not to defame.  The Complaint details Defendants' ongoing trademark infringement and counterfeiting that continued after Nike's numerous efforts to resolve this dispute without the need for litigation. (Compl. ¶¶ 10-11, 143-147.)  The Complaint also discusses third party Goyard's lawsuit against Defendants, brought a month prior to this action for similar conduct.  (Compl. ¶¶ 11, 146.)  Nike's public statement regarding this enforcement action and its stated goal to "make sure consumers are not misled and have access to authentic Nike, Inc. products that are authorized and created according to our high standards with the performance benefits they expect" cannot form the basis for Defendants' defamation claim.  *See Lombardo v. Dr. Seuss Enterprises*, L.P., No. 16 Civ. 9974 (AKH), 2017 WL 1378413, at *5 (S.D.N.Y. Apr. 7, 2017) (rejecting defamation and tortious interference claims based on notice to third parties of Lombardo's infringement); *Gallina v. Giacalone*, 655 N.Y.S.2d 317, 321-322 (N.Y. Sup. Ct. 1997) (defendant's public statements regarding plaintiffs' alleged trademark infringement were not defamatory and "done in good faith and consistent with the law that requires activity by the owner of the mark to prevent an inference

of abandonment"); *cf. P. Kaufmann, Inc. v. Americraft Fabrics, Inc.*, 232 F. Supp. 2d 220, 225 (S.D.N.Y. 2002) (copyright enforcement letters to third party are a complete defense to tortious interference claim); *Radiancy, Inc. v. Viatek Consumer Prods. Group*, 138 F. Supp. 3d 303, 328 (S.D.N.Y. 2014) (trademark owners are entitled to "advise others of his trademark rights, to warn others they or others are or may be infringing his rights, to inform others that he is seeking to enforce his rights through legal proceedings, and to threaten accused infringers and their customers with suit" and thus dismissing tortious interference claim). Nike brought this lawsuit to protect its intellectual property rights and to protect consumers from Defendants' infringing conduct and Defendants have no factual basis to plausibly allege otherwise.

In addition, Defendants claim that Nike's use of the term "counterfeiting" is defamatory because Nike "play[s] upon the plain meaning and popular understanding of [an] incendiary term." (Countercl. ¶¶ 8, 105, 128.) But counterfeiting is not an incendiary term, it is a legal cause of action, which is precisely how Nike used it in its Complaint and public statement summarizing its allegations. *See* 15 U.S.C. § 1114; (Compl. ¶¶ 164-171, 181-188); *supra* § II.B. *El Greco* is instructive. There, the court held that using the word "counterfeit" in a complaint and in out-of-court statements was not defamatory, even though the court disagreed with plaintiff's position that genuine and unmodified products that plaintiff did not authorize defendant to sell constituted "counterfeiting" activity. *El Greco*, 623 F.Supp. at 1040-1041, 1042-1044. The court explained that it could "not conclude that the *Williams* exception to an otherwise absolute privilege" applied because plaintiff described those genuine and unmodified but unauthorized products as counterfeit instead of infringing. *Id.* at 1042. By contrast here, even if Defendants establish that their accused products bearing spurious Nike trademarks used some original Nike materials, the shoes would nonetheless amply fall within the definition of Lanham Act counterfeits. 15 U.S.C. § 1114(1)(a);

*Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426, 435 (S.D.N.Y. 2012) ("[D]efendants' [newly fabricated] marks are demonstrably counterfeit: As described below, they are substantially indistinguishable from Coach's mark."); *Consolidated Cigar Corp. v. Monte Cristi de Tabacos*, 58 F. Supp. 2d 188, 196 (S.D.N.Y. 1999) ("The Lanham Act defines a 'counterfeit' as 'a spurious mark which is identical with, or substantially indistinguishable from, a registered mark.' The mark used on the MCdT cigars and in MCdT cigar packaging is substantially indistinguishable from CCB's validly registered MONTECRISTO trademarks. MCdT cigar bands and boxes are nearly identical to plaintiffs' cigar bands and boxes, with only minor differences which would not be apparent to an unwary observer and which are legally insignificant… Therefore, the Court grants summary judgment in favor of Plaintiffs for trade dress counterfeiting.").   While Section 1116(d)(1)(B) excludes from the definition of "counterfeit" identical marks that were authorized at the time of their manufacture, Nike alleges that Defendants are manufacturing identical marks to Nike's Trademarks without authorization.  (Compl. ¶¶ 166-167.)  The alleged inclusion of original Nike soles in the counterfeit versions is therefore irrelevant. *C.f. Pizza Inn, Inc. v. Adeniregun,* No. 3:08-CV-1598-N, 2011 WL 13290459, at *3 (N.D. Tex. Mar. 15, 2011) (noting that "[t]he final clause of the definition raises the question of whether Adeniregun used counterfeit marks, as the marks were authorized at the time they were created" yet still finding counterfeiting where "Adeniregun did not create new, counterfeit marks, he simply continued to use the formerly-authorized marks and signage after Pizza Inn terminated his franchise.").

In sum, the *Williams* exception does not apply here and Defendants' defamation counterclaim relating to the out of court statements that report on its claims and allegations must be dismissed with prejudice.

### C.    If Not Dismissed, The Defamation Count Will Multiply The Proceedings

Nike is cognizant of the Court stating during the pretrial conference that defamation is a legal issue and questioning why Nike would move to dismiss the Count now.  In addition to the explanation raised by Nike's counsel on January 2, 2025, it is now clear that allowing Defendants to pursue its unviable legal claim for defamation will exponentially multiply the proceedings, pulling resources away from the actual dispute: whether Defendants' conduct is unlawful or shielded by one of Defendants' asserted defenses.  The New York Court of Appeals and courts within this District recognize that "there is particular value in resolving defamation claims at the pleading stage, so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms."  *Kesner v. Dow Jones & Company, Inc.*, 515 F. Supp. 3d 149, 166-167 (S.D.N.Y. 2021); *Armstrong v. Simon & Schuster, Inc.*, 649 N.E.2d 825, 828 (N.Y. 1995); *see also Adelson v. Harris*, 973 F. Supp. 2d 467, 481 (S.D.N.Y. 2013), *aff'd*, 876 F.3d 413 (2d Cir. 2017).  Where, as here, the defamation claim rests on allegations that a party has brought a lawsuit in bad faith, discovery necessarily implicates questions of attorney-client privilege and often springs protracted discovery disputes on the same. *See, e.g.*, *Sparrow Fund Management LP v. MiMedx Group, Inc.*, No. 18-cv-4921, 2021 WL 1930294 (S.D.N.Y. May 13, 2021).

Indeed, on January 8, 2025, six days after the pre-motion conference, Defendants served multiple discovery requests on Nike directed exclusively to the defamation counterclaim and that seek to pierce the attorney-client and work product privilege, including, for example:

- IDENTIFY who at NIKE or working on YOUR behalf participated in any way in conceiving, ideating, drafting, putting together, revising, finalizing, or conveying any part of the defamatory statement alleged in Paragraphs 8, 10, 104, and 128 of the COUNTERCLAIMS."[4]

---

[4] Duvdevani Decl. ¶ 3, Ex. 2 at Rog. 14.

- IDENTIFY all COMMUNICATIONS outside of NIKE that YOU or anyone working on YOUR behalf have had RELATING TO any part of the defamatory statement alleged in Paragraphs 8, 10, 104, and 128 of the COUNTERCLAIMS, including by describing who NIKE or anyone acting on YOUR behalf communicated to (including at least such PERSON's title and company), when/how the COMMUNICATION was made, and why it was made.[5]

- All DOCUMENTS and COMMUNICATIONS RELATING TO any of the defamatory statements at issue in THIS ACTION per the COUNTERCLAIMS, including documents sufficient to identify (and all of the COMMUNICATIONS between) all PERSON(S) involved in any way in conceiving, ideating, drafting, revising, finalizing, or conveying any of the defamatory statements. attempts to impede Nike's pre-litigation investigation.[6]

- All DOCUMENTS and COMMUNICATIONS RELATING TO NIKE's reason(s) for not raising the "from scratch"/counterfeiting allegations included in the COMPLAINT with DEFENDANTS' before filing ACTION.[7]

While the Court need not consider these demands in connection with the relief Nike seeks in the instant Motion, they demonstrate why dismissal of the defamation count would support judicial economy.[8]  These demands not only exceed the scope of Nike's claims, but they also will likely result in discovery disputes over privilege and other objections, unnecessarily draining time and resources away from resolving the actual trademark and counterfeiting disputes.  *Ellington Credit Fund, Ltd. v. Select Portfolio Servs., Inc.,* No. 08 Civ. 2437 (RJS), 2008 WL 11510668, at *3 (S.D.N.Y. June 12, 2008) (recognizing significant burden where "many of the documents sought would be protected by … the attorney-client privilege, or other applicable privileges" as "there is likely to be significant motion practice regarding the scope and extent of disclosure."). Prompt dismissal of these claims would avoid wasting party and judicial resources.

---

[5] *Id*. at Rog. 15.

[6] Duvdevani Decl. ¶ 4, Ex. 3 at RFP 25.

[7] *Id.* at RFP 32.

[8] Nike will seek Defendants' cooperation in agreeing to stay any defamation-related discovery while this Motion is pending.  Should Defendants refuse, Nike will seek a pre-motion conference to stay defamation-related discovery.

## VI.    CONCLUSION

For the reasons set forth above, Defendants' Counterclaim I should be dismissed with prejudice.

Dated: January 21, 2025

/s/ Tamar Y. Duvdevani
Tamar Y. Duvdevani
Marc E. Miller
Joshua Schwartzman
Gabrielle Chasin Velkes
**DLA PIPER LLP (US)**
1251 Avenue of the Americas 27th Fl.
New York, New York 10020-1104
Telephone: (212) 335-4799
tamar.duvdevani@us.dlapiper.com
marc.miller@us.dlapiper.com
joshua.schwartzman@us.dlapiper.com
gabrielle.velkes@us.dlapiper.com

*Attorneys for Plaintiff Nike, Inc.*